1  HUESTON HENNIGAN LLP
   John C. Hueston, State Bar No. 164921
2  jhueston@hueston.com
   Douglas J. Dixon, State Bar No. 275389
3  ddixon@hueston.com
   Michael A. Behrens, State Bar No. 284014
4  mbehrens@hueston.com
   Derek R. Flores, State Bar No. 304499
5  dflores@hueston.com
   620 Newport Center Drive, Suite 1300
6  Newport Beach, CA 92660
   Telephone:  (949) 229-8640
7  Facsimile:   (888) 775-0898

8  SOUTHERN CALIFORNIA EDISON COMPANY
   Belynda B. Reck, State Bar No. 163561
9  belynda.reck@sce.com
   Laura Meyerson, State Bar No. 186725
10 laura.meyerson@sce.com
   2244 Walnut Grove Avenue
11 Rosemead, CA 91770
   Telephone:  (626) 302-6628
12
   Attorneys for Defendants
13 Southern California Edison Company and
   Edison International
14

15                UNITED STATES DISTRICT COURT

16                CENTRAL DISTRICT OF CALIFORNIA

17 | CALIFORNIA AUTOMOBILE               | Case No.
   | INSURANCE COMPANY; MERCURY          |
18 | CASUALTY COMPANY; GUIDEONE          |
   | MUTUAL INSURANCE COMPANY;           | **DEFENDANTS SOUTHERN**
19 | GUIDEONE SPECIALTY MUTUAL           | **CALIFORNIA EDISON COMPANY**
   | INSURANCE COMPANY; FLORISTS'        | **AND EDISON INTERNATIONAL'S**
20 | MUTUAL INSURANCE COMPANY;           | **NOTICE OF REMOVAL OF CIVIL**
   | AND UNIVERSAL NORTH AMERICA         | **ACTION**
21 | INSURANCE COMPANY,                  |
                                         | [28 U.S.C. SECTIONS 1441 and 1442]
22              Plaintiffs,              | [Federal Question Jurisdiction; Federal
                                         | Officer Removal]
23         vs.

24 SOUTHERN CALIFORNIA EDISON
   COMPANY, EDISON
25 INTERNATIONAL, and DOES 1
   through 50, inclusive,
26
                Defendants.
27

28

EDISON DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION

6005749

TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. sections 1331, 1441, 1442, and 1446, Defendants Southern California Edison Company ("SCE") and Edison International ("EIX") (collectively, the "Edison Defendants") hereby give notice of the removal of the action *California Automobile Insurance Company, et al. v. Southern California Edison Company, et al.*, No. 21STCV18515, which is currently pending in the Superior Court of California, County of Los Angeles, to this United States District Court for the Central District of California, Western Division.

In support of removal, the Edison Defendants state as follows:

1. On May 17, 2021, Plaintiffs California Automobile Insurance Company; Mercury Casualty Company; Guideone Mutual Insurance Company; Guideone Specialty Mutual Insurance Company; Florists' Mutual Insurance Company; and Universal North America Insurance Company ("Plaintiffs") filed a Complaint in the Superior Court of California, County of Los Angeles, Case No. 21STCV18515 (the "State Court Action"). True and correct copies of the Summons, Complaint, and Civil Case Cover Sheet-Addendum, are attached as **Exhibits A-C**.

2. On May 20, 2021, the court in the State Court Action issued a minute order deeming the case complex and reassigning it to a different department. A true and correct copy of that minute order is attached as **Exhibit D**.

3. No other process, pleadings, or orders have been served on the Edison Defendants in the State Court Action.

## FEDERAL QUESTION JURISDICTION

4. Removal of the State Court Action is proper under 28 U.S.C. § 1441(a) because the district courts of the United States have original jurisdiction over this action. As set forth below, this Court has original jurisdiction in this action pursuant to 28 U.S.C. § 1331 because the Complaint asserts causes of action arising under

federal law—specifically, under the federal enclave doctrine.  (Compl. ¶¶ 3, 14 (alleging that the Creek Fire ignited in the Angeles National Forest).)

5. Federal courts have "federal question jurisdiction" over claims that "arise on 'federal enclaves.'"  *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006).  The federal enclave doctrine arises from Article I, Section 8, Clause 17 of the United States Constitution, which provides for "exclusive legislation in all Cases whatsoever . . . over all Places purchased by the Consent of the Legislature of the State" for the "Erection of Forts, Magazine, Arsenals, dock-Yards, and other needful Buildings."  Plaintiffs' claims here satisfy federal question jurisdiction because they allegedly arose on a federal enclave: the Angeles National Forest.

6. Whether the United States has acquired jurisdiction over a federal enclave is itself a "federal question."  *Paul v. United States*, 371 U.S. 245, 267 (1963) (citing *Silas Mason Co. v. Tax. Comm'n*, 302 U.S. 186, 197 (1937)).  For federal enclave jurisdiction to exist, (1) the "United States must purchase land from a state for the purpose of erecting forts, magazines, arsenals, dock-yards, or other needful buildings," (2) the "state legislature must consent to the jurisdiction of the federal government"; and (3) "if the property was acquired after 1940, the federal government must" affirmatively accept jurisdiction.  *See Wood v. Am. Crescent Elevator Corp.*, No. 11-397, 2011 WL 1870218, at *2 (E.D. La. 2011) (citing *Paul*, 371 U.S. at 264); *see also United States v. Fields*, 516 F.3d 923, 935 (10th Cir. 2008) (prior to 1940, "federal acceptance of ceded jurisdiction was presumed absent an express refusal").  That a state has concurrent jurisdiction over a federal enclave does not bar removal.  *See Willis v. Craig*, 555 F.2d 724, 726 n.4 (9th Cir. 1977) ("We have no quarrel with the propriety of enclave jurisdiction in this case (if the facts support it), even though the state courts may have concurrent jurisdiction.").

7. The Angeles National Forest satisfies all three prerequisites for federal enclave status.  *First*, the United States established the forest reservations that became the Angeles National Forest by presidential proclamation between 1892 and 1903.  The

United States established the Santa Barbara National Forest in 1903, *see* Declaration of Douglas J. Dixon in Support of the Edison Defendants' Notice of Removal ("Dixon Decl."), Ex. 1 (33 Stat. 2327 (Dec. 22, 1903)), the San Bernardino National Forest in 1893, *see* Dixon Decl., Ex. 2 (35 Stat. 2159 (Feb. 25, 1893)), and the San Gabriel National Forest in 1892, *see* Dixon Decl., Ex. 3 (27 Stat. 1049 (Dec. 20, 1892)). The Angeles National Forest was established in 1908 by combining those three existing forests. (*See* Dixon Decl., Ex. 4 (E.O. 846 (July 1, 1908)).) And the United States' acquisition of the Angeles National Forest satisfies the requirements of Article I, Section 8, Clause 17. The Supreme Court has interpreted the phrase "other needful buildings" as "embracing whatever structures are found to be necessary in the performance of the functions of the federal government." *James v. Dravo Contracting Co.*, 302 U.S. 134, 143 (1937). Courts have long recognized that federal forests can constitute or contain "other needful buildings," and indeed the United States Forest Services has constructed many such buildings within the Angeles National Forest. *See Allison*, 689 F.3d at 1235 (Federal "enclaves include numerous military bases, federal facilities, and even some national forests and parks."); *United States v. Parker*, 36 F. Supp. 3d 550, 575 (W.D.N.C. 2014) (federal government had jurisdiction over Nantahala National Forest under Enclave Clause); George Cameron Coggins and Robert L. Glicksman, 1 Pub. Nat. Resources L. § 3:7 (2d ed.) ("'Needful Buildings' has been expanded to include most federal purposes, including locks and dams and national parks and national forests.").

8. *Second*, the State of California consented to federal jurisdiction over the Angeles National Forest. When the United States obtained the Angeles National Forest, California's then-active general cession statute provided that all cessions to the United States conveyed federal "jurisdiction over such piece or parcel . . . ceded or conveyed to the United States." *See* Stats. 1891, ch. 181, §§ 1–2 (Mar. 31, 1891). California's consent to federal jurisdiction applied not just to land conveyed before 1891, but also prospectively to any "piece or parcel of land" that may be "*hereaf[t]er*

ceded or conveyed to the United States." *Id*. (emphasis added).  For example, the Supreme Court has interpreted California's "Act of March 31, 1891" as having conveyed jurisdiction to the United States with respect to parts of Yosemite National Park.  *See Collins v. Yosemite Park & Curry Co.*, 304 U.S. 518, 527 (1938).

9.  *Third*, because the United States acquired the Angeles National Forest prior to 1940, its acceptance of jurisdiction is presumed.  Before 1940, "federal acceptance of ceded jurisdiction was presumed absent an express refusal." *United States v. Fields*, 516 F.3d 923, 935 (10th Cir. 2008) (citing *Forth Leavenworth Ry. Co. v. Lowe*, 114 U.S. 525, 528 (1885)); *see also S.R.A., Inc. v. State of Minn.*, 327 U.S. 558, 563 (1946) (holding that the United States had acquired legislative jurisdiction, because "at the time" Minnesota ceded land to the United States to build a post office, federal acceptance of jurisdiction was "presumed," even though the Court explicitly noted that that presumption had been "superseded" by the precursor to section 3112).

10. Although the Angeles National Forest is a national forest, 16 U.S.C. section 480 does not foreclose federal jurisdiction.  To begin, the terms of a cession are determined by the laws in effect at the time of transfer.  *See, e.g.*, *United States v. Gabrion*, 517 F.3d 839, 849 (6th Cir. 2008).  Section 480 similarly does not limit the United States' ability to enter into cession agreements with states conveying legislative jurisdiction over national forests; section 480 "means only that the mere establishment of the forest does not alter the jurisdictional status of the land," but "does not in any way preclude state and federal governments from entering into a relationship of concurrent jurisdiction." *United States v. Raffield*, 82 F.3d 611, 613 (4th Cir. 1996).

11. Plaintiffs themselves allege that their claims arose in the Angeles National Forest.  "In determining whether a claim arises on a federal enclave . . . district courts have simply looked to see where all the 'pertinent events' took place." *Rosseter v. Indus. Light & Magic*, No. C 08-04545 WHA, 2009 WL 210452, at *2 (N.D. Cal. Jan. 27, 2009) (citing *Steifel v. Bechtel Corp.*, 497 F. Supp. 2d 1138, 1148 (S.D. Cal. 2007)); *see also Doe v. Camp Pendleton & Quantico Housing LLC*, No. 20-

1 cv-224-GPC-AHG, 2020 WL 1890576, at *6 (S.D. Cal. 2020) (claims arose on federal
2 enclave when "pertinent alleged events took place on the Subject Property"). Here,
3 both the alleged conduct and the alleged injuries occurred within the Angeles National
4 Forest, and more specifically within the San Gabriel portion of the forest over which
5 California ceded jurisdiction on or before December 20, 1892. Plaintiffs allege that
6 the Creek Fire ignited in the Angeles National Forest. (Compl. ¶¶ 3, 14.) The
7 established origin area for the fire falls within the lands established as the San Gabriel
8 forest reservation in 1892. (*See* Dixon Decl., Exs. 3 (27 Stat. 1049), 5 (United States
9 Forest Service Origin and Cause Report).)[1] Moreover, the Creek Fire burn area
10 substantially overlaps the Angeles National Forest, making it possible that some of
11 Plaintiffs' insureds suffered damages within the Angeles National Forests' boundaries.
12 (*See* Dixon Decl., Ex. 5 at 23.)

### FEDERAL OFFICER REMOVAL

14  12.  An entity acting under a federal officer's directions may remove a state court action if "(a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Durham*, 445 F.3d at 1251 (citation omitted); *see also* 28 U.S.C. § 1442.

19  13.  The Edison Defendants are persons within the meaning of the statute. *See Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) ("corporations are 'persons' under [section] 1442(a)(1).").

22  14.  A causal nexus exists between Plaintiffs' claims and the alleged Edison Defendants' actions taken pursuant to a federal officer's directions. The "hurdle erected by the causal connection requirement is quite low." *Id.* (quoting *Isaacson v.*

---

[1] The USFS Origin and Cause report identifies the origin area as falling within Township 3 North, Range 14 West, Section 27. (*See* Dixon Decl., Ex. 5, at 1.) That area also falls within the San Gabriel National Forest as granted to the United States in 1892. *See* Dixon Decl., Ex. 3 (27 Stat. 1049) (identifying portion of western border of San Gabriel National Forest as the "surveyed and unsurveyed range line between Ranges fourteen (14) and fifteen (15) West" within "Township three (3) North").)

*Dow Chem. Co.*, 517 F.3d 129, 135–36 (2d Cir. 2008)). A causal nexus exists whenever an entity is involved in any "effort to *assist*, or help *carry out*, the duties or tasks of the federal superior." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 152 (2007).

15. Here, the United States Forest Service ("USFS") special use permit LAR 4030-11B authorizing the Edison Defendants to operate power lines within Angeles National Forest provides the requisite causal nexus.[2] LAR 4030-11B requires the Edison Defendants to "comply with the regulations of the Department of Agriculture and all Federal, State, county, and municipal laws ordinances, or regulations which are applicable to the area or operations covered by this permit." (*See* Dixon Decl., Ex. 6.) The Edison Defendants must submit all "extensions" to USFS and cannot start construction "until specifically approved in writing by the [USFS] District Ranger" and states that USFS's permission is required to "cut or destroy[ ] timber during construction" and to remove "hazardous" trees. (*See id.*) The Edison Defendants are also required to "protect the scenic and esthetic values of the right-of-way and the adjacent land as far as possible consistent with the authorized use, during the construction, operation, and maintenance of the facility." (*See id.*)

16. In addition to operating under significant federal direction, the Edison Defendants' operations in the Angeles National Forest include providing electricity to USFS facilities within the forest.

17. USFS regulations expand on those permit conditions, and include detailed requirements relating to Plaintiffs' allegations that the Edison Defendants failed to upgrade or maintain its equipment. *See generally* 36 C.F.R. § 251.56. And, unlike with private land where state law generally grants the Edison Defendants an easement to conduct routine vegetation management, USFS regulations state that approval is

---

[2] LAR 4030-11B was extended by amendment several times and, pursuant to USFS's requests, the Edison Defendants continued to operate under LAR 4030-11B after the Edison Defendants requested a renewal and until LAR 4030-11B was replaced in 2019 by the Southern California Edison Master Permit for Distribution on the Angeles National Forest. (*See, e.g.*, Dixon Decl., Exs. 7, 8.)

generally required before the Edison Defendants conduct non-emergency vegetation management on federal land. *See id.* § 251.56(h)(5)(viii)(A) ("Routine vegetation management must have prior written approval from the authorized officer . . ."). Detailed regulations and contractual requirements have been found to satisfy the causal nexus requirement for federal officer removal. *See, e.g., Goncalves*, 865 F.3d at 1245 (insurer's contractual obligation to federal agency to make "reasonable efforts" to pursue subrogation claims satisfied causal-nexus prong); *see also Perez v. Consolidated Tribal Health Project, Inc.*, 2013 WL 1191242 (N.D. Cal. March 21, 2013) (tribal health provider under contract to "provide general health services" satisfied causal nexus).

18.   The Edison Defendants further have "colorable federal defense[s]" to liability. *Durham*, 445 F.3d at 1251. At this stage, the Edison Defendants need not "win [their] case before" having it removed, nor [do they] need to show even a "clearly sustainable defense." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). Instead, to show a colorable federal defense, the Edison Defendants need only demonstrate that their asserted defenses are "not without foundation and [are] made in good faith." *Leite v. Crane Co.*, 868 F. Supp. 2d 1023, 1028 (D. Haw. 2012) (quoting *Colorado v. Symes*, 286 U.S. 510, 519 (1932)).

19.   The Edison Defendants have a colorable federal defense under the United States Constitution. Plaintiffs' complaint asserts an inverse condemnation claim under the California Constitution. (*See* Compl., ¶¶ 29–35.) The United States Constitution protects the Edison Defendants' due process rights and guards against uncompensated takings of the Edison Defendants' own property, and California decisions applying inverse condemnation to private utilities without a showing of fault violate those principles. *See Eastern Enters. v. Apfel*, 524 U.S. 498, 538 (1998) (plur. op.) (holding that the government's "allocation of liability to Eastern violates the Takings Clause"); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416–17 (2003) ("The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly

excessive or arbitrary punishments on a tortfeasor."); *Ketchum v. State*, 62 Cal. App. 4th 957, 963 (1998) (government action violates due process when there is no "rational relationship between the State's purposes" and the scope of liability).

20. For the purposes of preserving their arguments, the Edison Defendants additionally assert that they have a colorable federal defense that the government contractor defense applies. Ninth Circuit precedent currently limits the government contractor defense to military contractors. *See Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 731 (9th Cir. 2015). Other circuits have disagreed. *See, e.g., Carley v. Wheeled Coach*, 991 F.2d 1117, 1124 (3d Cir. 1993) ("the government contractor defense is available to manufacturers of nonmilitary products as a matter of federal common law"); *Burgess v. Colorado Serum Co., Inc.*, 772 F.2d 844, 846 (11th Cir. 1985) ("it would be illogical to limit the availability of the defense solely to 'military' contractors"); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1089 (6th Cir. 2010) (siding with the Third and Eleventh Circuits in the context of federal officer removal). The Edison Defendants recognize that the Court is bound to follow *Cabalce* and prior Ninth Circuit decisions. But, if this case later proceeds before the Ninth Circuit or Supreme Court, the Edison Defendants may request rehearing en banc or petition for a writ of certiorari.

21. To invoke that defense, a defendant must establish that: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Getz v. Boeing Co.*, 654 F.3d 852, 861 (9th Cir. 2011) (quoting *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988)). Here, LAR 4030-11B contains precise specifications that the Edison Defendants must (and did) follow to perform maintenance on its equipment in the Angeles National Forest and that equipment supplies electricity to USFS; the government was warned of the dangers because the permit has provisions relating to fire risk. (*See* Dixon Decl., Ex. 6.)

## REMOVAL IS TIMELY

22. Plaintiffs filed the State Court Action against the Edison Defendants on or about May 17, 2021. Plaintiffs have not served the Edison Defendants with a copy of the Complaint or a Summons. (Dixon Decl. ¶ 4.) This Notice of Removal is timely, because the Edison Defendants filed it prior to service. *See* 28 U.S.C. § 1446(b); *see also, e.g.*, *Novak v. Bank of New York Mellon Tr. Co., N.A.*, 783 F.3d 910, 914 (1st Cir. 2015) (collecting cases, and noting that "every" federal court to have considered the question "has concluded that formal service is not generally required before a defendant may file a notice of removal"); *Loewen v. McDonnell*, No. 19-cv-00467-YGR, 2019 WL 2364413, at *7 (N.D. Cal. June 5, 2019) (same); *Watanabe v. Lankford*, 684 F. Supp. 2d 1210, 1215 (D. Haw. 2010) (same).

## VENUE IS PROPER IN THIS COURT

23. The U.S. District Court for the Central District of California, Western Division, is the "district and division within which [the state court action] is pending," i.e., Los Angeles County, California. Thus, venue in this Court is proper under 28 U.S.C. § 1446(a).

## THE EDISON DEFENDANTS CONSENT TO REMOVAL

24. The undersigned counsel represents SCE and EIX in this case and both SCE and EIX consent to removal. The consent of the remaining unnamed Doe Defendants is not required. *See Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants not required to join in removal petition).

## NOTICE TO PLAINTIFFS AND STATE COURT

25. Pursuant to 28 U.S.C. § 1446(d), the Edison Defendants will promptly serve upon Plaintiffs' counsel of record and file with the Los Angeles County Superior Court a true and correct copy of this Notice.

By removing this action to this Court, the Edison Defendants do not waive but instead expressly preserves any and all arguments and defenses available to them.

1     WHEREFORE, the Edison Defendants respectfully remove this action from the Superior Court of the State of California, in and for the County of Los Angeles, to this Court pursuant to 28 U.S.C. § 1441(a).

Dated: July 21, 2021

Respectfully submitted,

HUESTON HENNIGAN LLP

By: _____
Douglas J. Dixon
Attorney for Defendants
Southern California Edison Company
and Edison International